# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kathy Ruth Coers,**
**Respondent/Appellant Below, Petitioner**

**vs.)  No. 17-0233** (Randolph County 08-D-176)

**Franklin D. Phares,**
**Petitioner/Appellee Below, Respondent**

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kathy Ruth Coers, by counsel Christopher T. Pritt, appeals the Circuit Court of Randolph County's February 9, 2017, order denying her "request for reconsideration" and petition for appeal. Respondent Franklin D. Phares, pro se, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding no authority to reconsider its prior decision dismissing an earlier petition for appeal, in affirming the adoption of a qualified domestic relations order ("QDRO"), and in affirming the finding that petitioner was in contempt of court.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were divorced by "Final Divorce Decree" entered on November 17, 2008. Prior to the parties' separation, in 2002, respondent retired, and he began receiving his pension. The "Final Divorce Decree" addressed respondent's pension and provided that petitioner was entitled to one-half of his pension accrued from the date of the parties' marriage until their separation. The "Final Divorce Decree" further provided that petitioner

> shall continue to be designated as the [respondent's] surviving spouse beneficiary of his state public employees retirement system pension (option a) entitling [petitioner] to 100% of the Joint and Survivor benefit in the event the [respondent] predeceases the [petitioner]. Counsel for the [petitioner] will prepare the appropriate [QDRO] to accomplish this division and the Court retains jurisdiction to enter such orders.

On May 3, 2010, the family court entered an "Order Granting 60(a) Relief and Correcting Decree of Divorce" ("Rule 60(a) Order"). This order noted that the "Final Divorce Decree" "failed to include language requiring the [respondent] to pay to the [petitioner] her share of the

1

marital portion of the [respondent's] net PERS pension check until the entry of the QDRO[.]" Therefore, the family court ordered that the following language be added to the "Final Divorce Decree:"

> The [respondent] shall pay to the [petitioner] her share (or .1864406779) of the net PERS pension check that he receives until the entry of the QDRO. Until such time as the QDRO is entered, the [respondent] shall be responsible for the federal and state income taxes associated with the gross pension distribution, and the [respondent] shall pay to the [petitioner] her share of the net pension benefit (gross benefit minus normal taxes) he receives each month.

Payments were to be made to petitioner

> for her share of the respondent's net PERS pension benefits as defined herein until the entry of the QDRO, at which time [petitioner] shall bear any tax liability for the amount that she is paid directly from the State Retirement Board as alternate payee upon the entry of the approved QDRO.

In compliance with this provision, respondent paid to petitioner $368.80 per month.[1]

Five years after the entry of the Rule 60(a) Order, petitioner had not yet filed the required QDRO. Accordingly, on December 7, 2015, respondent filed a petition for a rule to show cause, in which he asserted that petitioner should be found in contempt of court due to the delay in submitting a QDRO. The parties appeared for a hearing on this petition, and on February 18, 2016, the family court entered its "Final Order on Co[n]tempt Proceedings." The family court, noting the seven-plus years that had passed since petitioner was first directed to prepare a QDRO in the "Final Divorce Decree," found her in contempt of its prior orders due to her failure to submit a pre-approved QDRO for entry. Petitioner was further ordered to submit a draft QDRO to the West Virginia Consolidated Public Retirement Board ("Board") for pre-approval prior to May 1, 2016.

Petitioner appealed the family court's February 18, 2016, order to the circuit court. The circuit court, by order entered on August 30, 2016, found that the family court did not abuse its discretion in making the findings or rulings contained within the February 18, 2016, order, and it denied petitioner's petition for appeal.

Meanwhile, respondent prepared a draft QDRO and submitted it to the Board for pre-approval. The draft QDRO contained the following language:

---

[1]Although different from the percentage identified in the Rule 60(a) Order, petitioner and other documents calculate her share at 18.61673%. The precise calculations are unnecessary for resolution.

(b) The Participant's[, respondent's, Vested Accrued Retirement Benefit ("VARB")] is the benefit due the Participant as of the QDRO Determination Date. If, at the time benefit payout commences, the Participant elects a benefit in the form of an annuity, then the VARB shall be the annuitized benefit which would have been available to the Participant as of the QDRO Determination Date, calculated without regard to any minimum years of service requirement and in the same form elected by the Participant at payout. *(The Alternate Payee[, petitioner,] is not to be treated as the surviving spouse of the Participant for purposes of calculating benefits payable to the Participant or Alternate Payee hereunder.)* If, at the time benefit payout commences, the Participant elects a return of contributions (plus interest as may be allowed by law), then the VARB shall be the return of contributions (plus interest as may be allowed by law) to which the Participant would have been entitled as of the QDRO Determination Date.

(Emphasis added.) The Board pre-approved the order, and respondent submitted it to the family court for entry on October 21, 2016.

Petitioner filed objections to the entry of respondent's draft QDRO. Petitioner argued that the italicized language above deprived her of her surviving spouse beneficiary status and that her benefits were improperly calculated. To protect her surviving spouse benefit, petitioner argued that the QDRO should have contained a provision to comport with West Virginia Code of State Rules § 162-1-7.2.g.1. Under that regulation,

a [QDRO] with respect to a retirant who has already retired as of the date of entry of the order may prohibit a retirant who elected a joint and survivor annuity option upon retirement from changing said joint and survivor annuity to a life annuity upon the retirant's divorce: and further provided that a [QDRO] with respect to a retirant who has retired as of the date of entry of the order may also prohibit the retirant from naming a new spouse as an annuitant for any retirement benefit option available under the plan to a retirant who divorces and remarries after retiring.

Petitioner argued that the language was necessary to protect her survivorship interest because West Virginia Code § 5-10-24(c) and (d) otherwise permit a retirant, upon divorce, to change his or her retirement benefit to a life annuity or, following remarriage, to "name the new spouse as an annuitant for any of the retirement benefit options offered[,]" and because respondent remarried.[2]

---

[2]West Virginia Code § 5-10-24(c) provides that,

[u]pon divorce, a retirant may elect to change any of the retirement benefit options offered by the provisions of this section to a life annuity in an amount adjusted on a fair basis to be of equal actuarial value of the annuity prospectively in effect relative to the retirant at the time the option is elected: *Provided*, That the

(continued . . . )

Petitioner further explained that her benefits were improperly calculated because the VARB is a smaller amount than the total distribution petitioner was then receiving. Under the QDRO, and as mandated by West Virginia Code of State Rules § 162-1-7.2.a., the marital property portion of respondent's retirement benefit is calculated by

> multiplying the [VARB], *less all benefits due to Exempt Service*, by a fraction, the numerator being the number of years of contributing service incurred during the marriage, and the denominator being the total number of years of contributing service towards the pension at the date of separation or the date of divorce.

(Emphasis added.) When respondent's exempt service (i.e., military service) is subtracted from the VARB, his monthly benefit amounts to $1885.14. This is less than respondent received prior to the entry of the QDRO and results in a smaller amount paid to petitioner. Specifically, petitioner contended that the QDRO deprived her of $17.85 per month. To recoup this amount, petitioner argued that her share of the marital portion should have been calculated at 52.5% instead of 50%, because to use 50% violates the "Final Divorce Decree."

In its November 15, 2016, "Order," the family court concluded that it had "no authority over the Retirement Board to require it to include the language requested by the [petitioner.]" With respect to petitioner's assertion that the draft QDRO deprived her of her joint and survivor benefit, the family court stated only that the "lack of language in the QDRO does

---

> retirant furnishes to the board satisfactory proof of entry of a final decree of divorce or annulment: *Provided, however*, That the retirant certifies under penalty of perjury that no qualified domestic relations order, final decree of divorce, or other court order that would restrict the election is in effect: *Provided further*, That no cause of action against the board may then arise or be maintained on the basis of having permitted the retirant to name a new spouse as annuitant for any of the survivorship retirement benefit options.

West Virginia Code § 5-10-24(d) provides that,

> [u]pon remarriage, a retirant may name the new spouse as an annuitant for any of the retirement benefit options offered by the provisions of this section: *Provided*, That the retirant shall furnish to the board proof of marriage: *Provided, however*, That the retirant certifies under penalty of perjury that no qualified domestic relations order, final decree of divorce or other court order that would restrict the designation is in effect: *Provided further*, That no cause of action against the board may then arise or be maintained on the basis of having permitted the retirant to name a new spouse as annuitant for any of the survivorship retirement benefit options. The value of the new survivorship annuity shall be the actuarial equivalent of the retirant's benefit prospectively in effect at the time the new annuity is elected.

not change the property agreement [providing petitioner with the joint and survivor benefit] that was entered into by the parties." The family court signed the draft QDRO, but withheld entry of the order for thirty days pending appeal.

Petitioner appealed the November 15, 2016, family court order to circuit court. Petitioner also filed with the circuit court a "request to reconsider" its August 30, 2016, order denying her petition for appeal of the family court's February 18, 2016, order. The circuit court addressed both petitioner's appeal and "request for reconsideration" in a February 9, 2017, order. The circuit court, finding "no authority . . . to reconsider an appeal of a [f]amily [c]ourt matter[,]" denied petitioner's "request for reconsideration." The circuit court also denied petitioner's petition for appeal, finding that the family court's November 15, 2016, rulings were neither an abuse of discretion nor clearly erroneous. It is from this February 9, 2017, order that petitioner appeals.

We apply the following standard of review:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner argues that the circuit court erred in finding it had no authority to reconsider its prior denial of an appeal of a family court matter, in finding that the family court's adoption of the QDRO was not an abuse of discretion or clearly erroneous, and in affirming the family court's order finding petitioner in contempt of court.

In support of her first contention, that the circuit court erred in finding it lacked authority to reconsider its prior denial, petitioner argues that her "request for reconsideration," which was filed pro se, was "for all practical purposes" a request for relief pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure. Although petitioner acknowledges that "express language" was not used, she asserts that she was requesting relief for "any other reason justifying relief from the operation of the judgment" under Rule 60(b)(6).[3] Petitioner argues that a circuit court is vested with the authority to reconsider its prior decision, as indicated in *Delapp v. Delapp*, 213 W.Va. 757, 584 S.E.2d 899 (2003).

---

[3]Rule 60(b) of the West Virginia Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."

We find no error in the circuit court's finding that no authority existed for it to "reconsider" its final order. As petitioner acknowledges, her "request for reconsideration" failed to designate the rule under which she was seeking relief and failed to include any analysis using the "express language" of the rule or any of our jurisprudence relative to motions for relief from a judgment filed pursuant to Rule 60(b). "The filing of motions which fail to identify the Rule of Civil Procedure or other legal authority providing the right to relief may serve as grounds for summary denial." *Malone v. Potomac Highlands Airport Auth.*, 237 W.Va. 235, 240, 786 S.E.2d 594, 599 (2015). Moreover, many of the arguments presented in petitioner's "request for reconsideration" merely reiterated the arguments presented in her initial appeal. "Where the motion is nothing more than a request that the court change its mind, it is not authorized by Rule 60(b)." *Builders' Serv. & Supply Co. v. Dempsey*, 224 W.Va. 80, 85, 680 S.E.2d 95, 100 (2009). "[A] Rule 60(b) motion is simply not an opportunity to reargue facts and theories upon which a court has already ruled." *Id.* (citation omitted). Thus, because petitioner failed to identify any authority upon which the circuit court could provide relief from its prior order and simply reargued several points previously made, we find no error in the circuit court conclusion that no authority existed for it to "reconsider" its August 30, 2016, order.[4]

Petitioner's second assignment of error is that the circuit court erred in finding that the family court's adoption of the QDRO was not an abuse of discretion or clearly erroneous. Specifically, petitioner argues that the QDRO divests her of her joint and survivor benefit, is not compliant with federal law, fails to include language that protects her joint and survivor benefit, and inaccurately calculates the benefits owed to her.

Petitioner is mistaken in asserting that the QDRO divests her of her joint and survivor benefit. To the contrary, she was awarded this benefit in the "Final Divorce Decree" and retains the ability to compel performance of that agreement. More importantly, however, is the fact that "there is no statutory authority to accomplish through a QDRO directed at PERS benefits what [petitioner] bargained for as part of her divorce: survivorship benefits." *Jones v. W.Va. Pub. Emps. Ret. Sys.*, 235 W.Va. 602, 615, 775 S.E.2d 483, 496 (2015). This is so because an ex-spouse may only "receive up to 100 percent of the *marital property portion of the retirement benefits* through a QDRO." *Id.* at 614, 775 S.E.2d at 495 (emphasis added). Petitioner was only married to respondent for a portion of the time that he was a PERS member; accordingly, to accomplish petitioner's wishes concerning her survivorship benefits, the QDRO would distribute more than the marital property portion of the retirement benefits, for which there is no statutory authority. *Id.* Moreover, petitioner fails to provide any law mandating the inclusion of West Virginia Code of State Rules § 162-1-7.2.g.1. Failure to include this language in the parties'

---

[4]To the extent the circuit court ruled that, even under circumstances in which a proper motion is submitted under Rule 60(b), it never has authority to reconsider a prior order, we nonetheless affirm the circuit court's conclusion on the alternate grounds explained above. *See* Syl. Pt. 4, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.") (internal quotations and citation omitted).

QDRO does not divest her of survivorship benefit. To the contrary, she was awarded that in the parties' "Final Divorce Decree" and retains the ability to compel performance of that agreement should it become necessary.

Although petitioner maintains that the QDRO is not compliant with federal tax laws, we noted in *Jones* that "[*t*]*o assure compliance with federal tax laws*, the Board promulgated rules that address the requisites of domestic relations orders entered by this state's courts." *Id.* at 612, 775 S.E.2d at 493 (emphasis added). The Board in this instance has preapproved the subject QDRO. In reviewing a QDRO, the Board assesses its compliance with statutory and regulatory law. *See id.* at 613, 775 S.E.2d at 494. Accordingly, we find no merit to the contention that the QDRO is in contravention of federal law.

Petitioner's final contention is that the QDRO miscalculates the benefits owed to her. Although petitioner was receiving a certain dollar amount prior to the entry of the QDRO under the Rule 60(a) Order, petitioner cites to no order mandating that she receive such specific dollar amount. To the contrary, the "Final Divorce Decree" is explicit in awarding her "one-half of [respondent's] pension." Therefore, we find no error in the QDRO's specification that she receive fifty-percent of the marital property portion of respondent's retirement benefits.

Finally, we find that petitioner has failed to carry her burden in establishing error in the contempt of court finding. Petitioner fails to offer any argument or authority in support of this ground. Rule 10(c) of the West Virginia Rules of Appellate Procedure mandates that a brief "contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error." Because petitioner failed to address this contention in any way, let alone in a fashion compliant with Rule 10(c), we need not consider it on appeal. *See* W.Va. R. App. P. 10(j).

For the foregoing reasons, we affirm the circuit court's February 9, 2017, order denying petitioner's "request for reconsideration" and petition for appeal.

Affirmed.

**ISSUED:** April 9, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

7